# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

MARIA ALAIMO, on behalf of herself and
all others similarly situated,

       Plaintiff,

  v.

KIND PATCHES LIMITED,

       Defendant.

**CLASS ACTION COMPLAINT
DEMAND FOR JURY TRIAL**

Case No. 25-cv-6092

Plaintiff Maria Alaimo, on behalf of herself and all others similarly situated, brings this class action suit for damages and equitable relief against Kind Patches Limited ("Kind" or Defendant"). Plaintiff alleges the following based upon personal information as to allegations regarding herself, and the investigation of her counsel, and on information and belief as to all other allegations:

## FACTUAL ALLEGATIONS

1.    This is a class action lawsuit against Kind, which sells a variety of health supplement "patches." This case is about one of Defendant's patches, which, until recently, were called "GLP-1 Patches," and now are called "Berberine Patches (Formerly GLP-1)," although sometimes are still referred to as simply "GLP-1 Patches" in marketing. Hereafter, the patches are referred to as "GLP-1 Patches."

2.    Defendant falsely and misleadingly advertises the GLP-1 Patches as providing a meaningful increase to natural GLP-1 levels comparable to actual GLP-1 agonist medications like Ozempic. Defendant claims that "750k People Are Obsessed with the GLP-1 Patches."

3.    GLP-1 is a hormone naturally produced by the human body. It serves many functions, including slowing digestion, increasing the sensation of satiety after eating, telling the pancreas when to release insulin, and stopping glucose from entering the bloodstream.

4.    Medicines such as Ozempic and Wegovy are GLP-1 agonists—synthetic versions of GLP-1. They are a medicine used to manage type-2 diabetes and are also extremely effective weight loss medications.

5.    While naturally occurring GLP-1 is quickly processed by enzymes in the body, giving it a half-life of only 1-2 minutes, GLP-1 agonists are designed to resist enzymes, giving them half-lives as long as 7 days.

6.    This longer half-life is what makes GLP-1 agonists an extremely effective weight loss tool, giving users the benefits of the GLP-1 hormone—such as slower digestion and feelings of satiety—for days rather than minutes.

7.  As a result, increasing naturally produced GLP-1 by modest amounts cannot create nearly the same weight loss effects provided by long-lasting GLP-1 agonists like Ozempic.

8.  Despite this, Defendant, like other companies, have been capitalizing off the popularity of GLP-1 medicines to hawk supposed natural supplements and patches that boost GLP-1.

9.  This "GLP-1 craze" includes pushing "supplements claiming to replace GLP-1 agonists completely, 'natural' versions of GLP-1 agonists that may work but be substantially less effective, and supplements intended to be taken alongside prescription medicine to 'boost' GLP-1 production."[1]

10.  However, as C. Michael White, a professor of pharmacy practice at the University of Connecticut School of Pharmacy has observed, "The marketing seems to suggest that you could get with these natural products, these natural ingredients, the same effect that you can get with GLP-1 agonists, which is simply not the case. And in that way, they are being misleading to people."[2]

11.  Defendant's GLP-1 Patches are the most popular type of GLP-1 patch.

12.  Defendant claims that the GLP-1 Patches are a "Natural Version of Ozempic,"[3] provide a "Stronger GLP-1 Boost" and "Support[] GLP-1 Production."[4]

---

[1] https://www.pbs.org/newshour/health/what-to-know-before-you-buy-a-weight-loss-supplement-on-tiktok

[2] *Id.*

[3] https://www.tiktok.com/@bishuwish/video/7519936092943011103

[4] https://web.archive.org/web/20250809183905/https://kindpatches.com/pages/glplpv4

13. Defendant also claims the GLP-1 Patches "Increase GLP-1 levels," and that "With the GLP-1 patch your muscles stay intact while loosing weight." Defendant also claims that the Patches get rid of sugar cravings.



14. The patches do not contain a GLP-1 agonist. Instead, the patches contain berberine extract, pomegranate extract, cinnamon extract, L-glutamine, and B vitamins.

15. Defendant nonetheless claims that the patches contain "Clinically proven ingredients that deliver real results," touting a clinical study based on berberine intake.



16.     And Defendant promises that "If you're tired of struggling with cravings, our GLP-1 patch is the solution."



17.     Defendant has used numerous social media influencers to promote the GLP-1 Patches. It also has aggressively marketed its advertisements on social media, making claims in advertisements such as: "Take control of your cravings and metabolism with the GLP-1 Patch—your smarter path to weight management."

18.     One TikTok influencer known as @ashzelda requested a free sample of Defendant's GLP-1 Patches to test if they worked and then post about them online.

19.     To help her market the patches, Defendant sent her a "content brief" guiding her on what she should and should not say online to remain in compliance with the brand.

20.     Ashzelda posted a video exposing the specifics of this content brief, showing that it explicitly instructs influencers to compare the patches to Ozempic.[5]

_____

[5] https://www.tiktok.com/@ashzelda/video/7531780074752757047

21.     Defendant's content brief tells influencers to show themselves "stick[ing] the patch where you'd normally get injections for Zempic (e.g. Belly button, thighs, upper arm)."

22.     Alternatively, the brief says influencers could advertise the patches by "Show[ing] Zempic pen and GLP-1 Patches." The brief then includes a picture of a girl holding what is presumably an Ozempic needle next to a jar of supplement, indicating that influencers should hold the patches next to an Ozempic needle to show that the two items are interchangeable:



23.     In addition to misleading visuals, Defendant also outlines the "main product selling points" for influencers to talk about in their videos.

24.     Defendant guides influencers to say that "Instead of one-time injections, Kind Patches use ingredients like berberine, glutamine, and chromium to…boost long-term metabolic function and steady production."

25.     The brief also claims that the patches "Help[] slow digestion, so food stays in your stomach longer—making you feel fuller and more satisfied after meals."

26.     These are benefits associated with GLP-1 agonist medications. By instructing influencers to claim these benefits for the GLP-1 Patches, Defendant aims to market its product as an analog to prescription medications.

27.     Defendant does not stop there, though.

28.     The content brief also tells influencers that the patches are "[a] smart, cost-effective alternative to expensive injections."

29.     Additionally, the brief says that these patches are great because there are "[n]o needles" and thus "[n]o nausea." Users can "skip the injections and discomfort" because "Kind Patches deliver active and all-natural ingredients through your skin—pain-free, mess-free, and easy to use anytime," says the brief.

30.     Defendant's marketing is intentionally misleading, implying that the only difference between the patches and Ozempic is the method of delivery. In reality, the GLP-1 Patches use only natural ingredients, making it impossible for them to deliver the same results as synthetic GLP-1 agonist medications.

31.     Other advertisements use the similar stock language about the patches'

benefits, emphasizing supposed "clinically-studied ingredients"

> I used to be stuck in the cycle of endless cravings and diets that never worked. That's why I'm so excited about the new GLP-1 Patch I've been using—it helps me feel less hungry, stay full longer, and keep my metabolism working with me, not against me.
>
> Powered by clinically-studied ingredients, it's been such a game-changer, and the best part is there are no pills or gummies—just stick it on and go. I honestly wish I'd found this sooner. You can be one of the first to try it at kindpatches.com.

 **altedgeco** with **Kind Patches**
Sponsored

I used to be stuck in the cycle of endless cravings and diets that never worked. That's why I'm so excited about the new GLP-1 Patch I've been using—it helps me feel less hungry, stay full longer, and keep my metabolism working with me, not against me.

Powered by clinically-studied ingredients, it's been such a ...





32. More advertisements make bold claims about losing weight, such as "Down 11 lbs with GLP-1 patches."



33. Other claims include a promise of "Smaller dress size in 8 weeks"

because "GLP-1 Patches help you stay full longer, making weight loss easier than ever."



34.     Other ads promise "No more meal-prep stress or extreme workouts," and "no pills" or "no injections."



35. Despite this marketing, however, Defendant's patches do not increase GLP-1 production in any meaningful way close to GLP-1 agonists. As an endocrinologist of the University of Southern California's Keck School of Medicine explained,

> The doses of the ingredients in the patches aren't anywhere near the amount that would be needed to have an effect on someone's GLP-1 production, says Dr. Alyssa Dominguez, an endocrinologist at the University of Southern California's Keck School of Medicine. "The doses are super off compared to anything that was in research studies, like they were giving people 8,000 times the dose of what is in the patch," she says. The concept behind the patches is not backed by science, according to Dr. Dominguez, though given their price point, she can understand why people would want to give them a try. "I would recommend not spending any money on these because I don't think they're going to do anything meaningful," she says. (The primary

ingredient in the GLP-1 shots is semaglutide, an ingredient that is not present in the patches.)[6]

36.   And as another expert in GLP-1 medications explained:

A closer look at these products shows they often contain ingredients like B-vitamin complex, berberine, cinnamon extract, and L-glutamine. While these supplements have been studied for various potential health benefits, the evidence connecting them to meaningful weight loss— especially when delivered through a patch—is weak. "None of these supplements have any evidence that they can help with weight loss," Dr. Bhuyan says. "There are small benefits to these supplements for different reasons." For example, B vitamins may help with energy if a person is deficient. She adds, "Another important factor to remember is that many of the benefits of these supplements have been studied in the oral doses, but there are limited studies in patch formulations."[7]

37.   And as related in the article, unregulated GLP-1 patches are exploding on TikTok Shop,

A new PBS report also noted that the studies Kind Patches referenced to support the use of berberine, glutamine, and chromium for weight loss were insufficient; the research for glutamine and chromium involved oral intake and the study for berberine was a meta-analysis "which encompassed many different studies where the administration methods are not always clear."[8]

38.   One influencer on TikTok, whom Defendant contacted to promote the GLP-1 Patches, declined to do so after she researched the product. She realized that

---

[6] https://www.rollingstone.com/culture/culture-features/glp1-patches-influencers-ozempic-1235403902/

[7] https://www.thehealthy.com/weight-loss/do-glp-1-patches-work-an-expert-doctor-weighs-in-with-the-verdict/

[8] https://www.mediamatters.org/tiktok/unregulated-glp-1-patches-are-exploding-tiktok-shop

the dosages of the ingredients in the Kind Patches did not "come close" to the amounts that were used in the clinical studies that Defendant references.[9]



39.     As a result of Defendant's false and misleading statements, users of the GLP-1 Patches pay a premium for what they believe is a product that has a meaningful and sustained impact on hunger and satiety, similar to actual GLP-1 agonist medications.

40.     Additionally, Defendant's efforts to change the name of the product from "GLP-1 Patches" to "Berberine Patches" is not enough to mitigate future deception,

---

[9] https://www.tiktok.com/@bishuwish/video/7519936092943011103

as Defendant maintains active social media ads calling the products "GLP-1 Patches." As of October 31, 2025, this ad—and tens of others referencing GLP-1—was still active on Meta platforms:



41.     Defendant's false and misleading statements caused Plaintiff and

members of the proposed classes to pay a price premium for the GLP-1 Patches. Had Plaintiff known the truth, Plaintiff would not have purchased the GLP-1 Patches or would have paid significantly less.

42.     Accordingly, Plaintiff seeks monetary and injunctive relief against Defendant under New York General Business Law ("GBL") §§ 349 & 350 on behalf of a proposed New York class, and common law unjust enrichment on behalf of a proposed Nationwide class.

## THE PARTIES

43.     Plaintiff Maria Alaimo is a resident of Staten Island, New York. Plaintiff reasonably relied on Defendant's false and misleading advertisements when she purchased the GLP-1 Patches, which were ineffective. Had Plaintiff known the GLP-1 Patches were not comparable to actual GLP-1 medications, she would not have purchased the GLP-1 Patches or would have paid less for them.

44.     Defendant Kind Patches Limited is a company registered in England and Wales with its registered office address in Berkhamsted, United Kingdom.

## JURISDICTION AND VENUE

45.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

46.     This Court has personal jurisdiction over Defendant because it purposefully directed its activities to this District, committed the tortious acts alleged

herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

47.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

## CLASS ACTION ALLEGATIONS

48.    Plaintiff brings this action on behalf of herself and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased the GLP-1 Patches within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

49.    Plaintiff also brings this action on behalf of herself and on behalf of the following proposed New York Class, initially defined as follows:

> All individuals in New York who purchased the GLP-1 Patches within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

50.    Excluded from the proposed Classes are Defendant, its, parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

51.    Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

52.    The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the

content of its statements or omissions, among individual class members.

53.     Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

54.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other individuals similarly situated under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

55.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

56.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiff at this time but can be ascertained from Defendant's records.

57.     **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within their control or Plaintiff and

the Classes themselves. Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

58. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant engaged in the conduct alleged in this Complaint;

(b) Whether Defendant violated the applicable statutes alleged herein;

(c) Whether Plaintiff and the class members are injured and harmed directly by Defendant's conduct;

(d) Whether Plaintiff and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

(e) Whether Plaintiff and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint

(f) Whether Plaintiff and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(g) Whether Plaintiff and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(h) Whether Plaintiff and the Classes are entitled to civil penalties;

(i) Whether Plaintiff and the Classes are entitled to reasonable attorneys' fees and costs.

59. **Typicality of Claims (Fed. R. Civ. P. 23(a)(3)).** The claims of Plaintiff and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiff and the putative class members. Plaintiff and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

60. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the class members, and she has retained counsel competent and experienced in complex class action, business competition, health care and consumer litigation. Plaintiff and her counsel will fairly and adequately protect the interest of the class members.

61. **Superiority of a Class Action (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation

necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

62.     **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or

impede their ability to protect their interests; or

(c)  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff and the New York Class)

63.    Plaintiff Alaimo incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

64.    NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

65.    NY GBL § 349 applies to Plaintiff and the New York Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

66.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a

prevailing plaintiff.

67. As alleged herein, Defendant's advertisements and promotion of the GLP-1-Patches are materially misleading and deceptive within the meaning of NY GBL § 349.

68. Defendant's acts and practices deceived Alaimo and the New York Class. Plaintiff and the New York Class reasonably relied on these representations and believed they were purchasing a product that would be effective like GLP-1 agonists for weight loss. In truth, the GLP-1 Patches cannot provide the advertised benefits.

69. Plaintiff Alaimo and the New York Class did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as being a natural equivalent to GLP-1 agonists medications such as Ozempic and Wegovy. The GLP-1 Patches are not capable of delivering on the promises Defendant makes.

70. Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Alaimo and the New York Class.

71. Plaintiff Alaimo and the New York Class have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

72. Plaintiff Alaimo and the New York Class have no adequate remedy at law.

73. Defendant's conduct has caused and continues to cause immediate and

irreparable injury to Plaintiff Alaimo and the New York Class and will continue to mislead consumers unless enjoined by this Court.

## SECOND CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 350
### (On Behalf of Plaintiff Alaimo and the New York Class)

74.     Plaintiff Alaimo incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

75.     By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Alaimo and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

76.     Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

77.     Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

78.     Plaintiff Alaimo and the New York Class have been injured by Defendant's deceptive acts or practices.

79.     Plaintiff Alaimo and the New York Class have no adequate remedy at law.

80. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Alaimo and the New York Class and will continue to damage both Plaintiff Alaimo and the New York Class and deceive the public unless enjoined by this Court.

81. Pursuant to NY GBL § 350-e, Plaintiff Alaimo and the New York Class seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350 a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

82. Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the GLP-1 Patches. Plaintiff and the New York Class reasonably relied on these representations and believed they were purchasing a product that would be effective like GLP-1 agonists for weight loss. In truth, the GLP-1 Patches cannot provide the advertised benefits.

83. Plaintiff Alaimo and the New York Class did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as being a natural equivalent to GLP-1 agonists medications such as Ozempic and Wegovy. The GLP-1 Patches are not capable of delivering on the promises Defendant makes.

84. The widespread deception not only caused financial harm to consumers but also promoted misleading narratives about natural supplements' ability to replace scientifically proven methods of increasing GLP-1—methods which are

critical for managing weight loss and type-2 diabetes.

85.     Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

## THIRD CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiff and All Classes)

86.     Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

87.     Plaintiff and the Classes conferred a benefit on Defendant in the form of payments for the GLP-1 Patches.

88.     Defendant accepted and retained these payments, even though it misrepresented the efficacy of the GLP-1 Patches.

89.     It would be unfair for Defendant to keep the money spent without compensating Plaintiff and the Classes because Defendant misled consumers into believing the Patches were effective, when in fact it they are not.

90.     Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiff and the class members and will continue to both damage Plaintiff and the class members and deceive the public unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.      certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Classes, and designating Plaintiff's counsel as Class Counsel;

B.      awarding Plaintiff and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.      awarding Plaintiff and the Classes appropriate relief, including actual and statutory damages;

D.      awarding Plaintiff and the Classes exemplary and punitive damages;

E.      awarding Plaintiff and the Classes civil penalties;

F.      granting Plaintiff and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.      enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.      awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

I.      awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

J.      awarding pre-judgment and post-judgment interest; and

K.      granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 31, 2025

Respectfully submitted,

*/s/ Raphael Janove*
Raphael Janove
**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
Tel: (646) 347-3940
Email: raphael@janove.law

**ZIMMERMAN REED LLP**
Ryan J. Ellersick (*pro hac vice forthcoming*)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Email: ryan.ellersick@zimmreed.com